## PRATT FOOD CO. v. CRETE MILLS et al.
### Patent Appeal No. 2641.

Court of Customs and Patent Appeals.
March 25, 1931.

George R. Hamlin, of Washington, D. C., for appellant.

Emil F. Lange, of Lincoln, Neb., and Raymond J. Mawhinney, of Washington, D. C., for appellees.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is a trade-mark interference proceeding arising under the Trade-Mark Registration Act of 1905, as amended (15 USCA §§ 81–109).

Appellant, as Pratt Food Company, of Philadelphia, Pa., on January 23, 1923, se-cured registration, No. 163,695, of the word "Victory" for trade-mark use for "foods for chickens, ducks, turkeys, geese, pigeons, birds and fowl." The application for this registration seems to have been filed December 6, 1921, and use of the mark alleged "since on or about October 1, 1920."

Prior to that time, to wit, on February 14, 1922, Security Mills & Feed Company, of Knoxville, Tenn., had secured registration, No. 151,941, of the word "Victor," apparently, in connection with the figure of an eagle having outstretched wings, for use on "poultry feed."

In an application originally filed July 28, 1926, but which was put in final form December 13, 1927, the Crete Mills, of Crete, Neb., sought to register, for use on certain poultry feeds, the word "Victor," printed somewhat diagonally and pierced at an angle by a representation of a sword. Use of the mark was alleged as follows: For Chick Mash, 1918; Chick Food, 1908; Growing Mash, 1918; Hen Scratch, 1918; Laying Mash, 1918; Poultry Fattener, 1914; Husky Scratch, 1920; Crate Fattener, 1914.

In April, 1928, the Examiner of Trade-Marks declared an interference to exist between the application of the Crete Mills and the registrations mentioned.

Registrant, Security Mills & Feed Company, made no response to the notice of interference and took no part in the subsequent proceedings. It is therefore only a nominal party herein and its registration need be no further considered. The issue is solely between Pratt Food Company and the Crete Mills, and "appellee," as hereinafter used, will be understood as referring wholly to the Crete Mills.

On May 9, 1928, appellant filed a motion for dissolution of the interference on the ground "that no interference in fact exists between the trade-mark 'Victory' * * * and the trade-marks of the [other] parties."

This motion alleged: (a) That "Victory" and "Victor" do not conflict; (b) that "Victory," as registered by appellant, stands alone and has a wholly different appearance from "Victor" in association with the figure of an eagle, or in association with a representation of a sword; (c) that some admission by counsel for the Crete Mills in a "paper filed August 17, 1927," expressing doubt whether confusion could arise between the two marks, was binding; and (d) that a certain waiver by the Quaker Oats Company in appellee's favor negatived the presumption that appellee was claiming the word

"Victor" alone, as did the fact that, in the drawing accompanying appellee's application, the word was associated with the sword.

In June, 1928, the motion for dissolution was overruled by the Examiner of Trade Marks, who stated, among other things:

"The Examiner is clearly of the opinion that the words Victor and Victory conflict when used upon the same goods. Sound and appearance of the words are alike and the association of either word with such devices as swords or eagles merely enhances the idea of conquest common to the two words. It is not believed that any expressions of doubt in the record of one of the parties estops that party from seeking to have the doubtful issue determined in an interference or that failure to oppose a published mark should lead to a presumption of acquiescence."

Following the overruling of this motion for dissolution, proof was taken by both parties, and on January 28, 1929, the Examiner of Interferences rendered decision adjudging the Crete Mills to be "entitled to the registration for which it has made application."

Upon appeal to the Commissioner of Patents the decision of the Examiner of Interferences was affirmed. The issue was then brought before us by appeal.

In the notice of appeal, appellant sets out fifteen assignments of error; in his brief, it is stated that his reliance is upon ten of these assignments.

Of those so relied upon it seems proper first to consider the ones which assert error in the alleged failure of the Examiner of Interference to "rule upon interference in fact." This contention is expressed in assignments 2, 3, and 10.

It is the insistence of appellant that the Examiner of Interferences made no ruling upon its motion to dissolve, and that therefore the provisions of section 7 of the Trade-Mark Registration Act (15 USCA § 87) were not complied with; that it has been denied a right made mandatory by statute; and that the decision should be reversed and, presumably, the matter remanded for an express declaration or holding by the Examiner of Interferences upon this point.

As to this contention we have only to say that it seems to us that appellant would have read into the statute language not now contained therein. Section 7 of the statute makes no mention of "motions for dissolution." The only applicable language here seems to be that:

"* * * the commissioner * * * in every case of interference * * * shall direct the examiner in charge of interferences to determine the question of the *right of registration* to such trade-mark, * * * in such manner and upon such notice to those interested as the commissioner may by rules prescribe." (Italics ours.)

Appellant has not made, and is not before us making, objection to appellee registering its mark, except, of course, it does not wish this to be done under an adjudication of priority in appellee's favor.

Appellant is not an opposer, in the sense of the statute, in these proceedings; the interference was not declared upon its initiative, but was the act of the Examiner of Trade-Marks, presumably, acting for the Commissioner of Patents under general instructions.

The obvious purpose of declaring the interference was to place the matter in a situation where the right of appellee to register might be passed upon in the light of the prior registrations found of record. Since no one appeared opposing appellee's application, and since, under the facts appearing, the Examiner of Trade-Marks did not feel it proper to either grant or reject the application without the question of priority being determined, the interference was declared.

Section 26 of the Trade-Mark Registration Act (15 USCA § 105) provides:

"That the Commissioner of Patents is authorized to make rules and regulations, not inconsistent with law, for the conduct of proceedings in reference to the registration of trade-marks provided for by this act."

Acting under this general authority, rules "governing the registration of trade-marks" have been promulgated, among them rule 54, the here material portion of which reads:

"Motions to dissolve an interference upon the ground that no interference in fact exists * * * or which deny the registrability of an applicant's mark * * * will be heard and determined by the examiner of trade-marks."

Also rule 55, which, in part, reads:

"The decision of the examiner in charge of trade-marks, upon a motion for dissolution, will be binding upon the examiner in charge of interferences unless reversed or modified on appeal."

We find nothing inconsistent with the statute in these rules. The statute does not require the Examiner of Interferences to pass upon motions to dissolve except, of course,

as such motions may relate to the "right of registration." In determining that right he may reverse or modify a decision of the Examiner of Trade-Marks. If there were no rule such as 55 and the Examiner of Interferences did not expressly or by clear implication reverse or modify a decision of the Examiner of Trade-Marks declaring an interference, the latter's holding would necessarily stand as an adjudication.

What the statute expressly requires of the Examiner of Interferences is determination of the right to registration. That he did expressly determine and declare in his decision in this case.

Our recent decision in the Skookum Packers' Ass'n v. Pacific Northwest Canning Co., 45 F.(2d) 915, 18 C. C. P. A. ——, will be found to contain matter here relevant.

In cases where there is an opposer the Examiner of Interferences is also charged by the statute with determining "the sufficiency of objections to registration."

That element is not presented in this case. Appellant's motion to dissolve was not the act of an opposer. On the contrary, it was equivalent to an act of acquiescence, or of consent on appellant's part to the registration sought.

The expression in the decision of the Examiner of Interferences, which reads, "This adjudication is regardless of whether the trade-mark rights of the parties are the same or different," is taken by us to mean that no matter whether he agreed with the Examiner of Trade-Marks or not, on the matter of an interference being properly declared, appellee was entitled to register; that is, were the interference dissolved, appellee would be entitled to register because of there being no conflict, while, if there was a conflict between the words, appellee was still entitled to register because of its priority in the use of its word.

Under this view it was not necessary for the Examiner of Interferences either to affirm or reverse the Examiner of Trade-Marks.

Assignments of error Nos. 2, 3, and 10 are without merit and are overruled.

Other assignments of error relate to the matter of appellee's word being associated with a representation of a sword, it being claimed that the mark must be treated as a whole, and that the presence of the sword affects the appearance of the mark.

This goes to the question of whether the marks of the respective parties so nearly resemble each other as that their application to goods, admittedly of the same descriptive properties, would be likely to cause confusion or mistake in the mind of the public or to deceive purchasers.

We think there can be no serious question that such is the case. A mere inspection of appellee's mark is sufficient to demonstrate that the word "Victor" is its dominating feature. The evidence is practically undisputed that the products upon which it is used are designated in the trade by both customers and salesmen as "Victor" products. The sword is but a subordinate characteristic of the mark and plays little, if any, part in the usages of trade in the products. Even without testimony "Victor" and "Victory" so closely simulate each other in appearance and sound as that it seems obvious confusion would likely arise in their use. But we are not left to speculate about likelihoods or probabilities. Actual confusion has been proven to have already occurred not alone when the words have been applied to flour, a product not here involved, but when applied to poultry foods.

The assignments of error upon this issue are also overruled.

The only remaining question of importance is that of who was the prior user.

There is no serious dispute but that appellant has used its word "Victory" upon poultry food products substantially continuously since 1920.

Relative to the use of "Victor" by appellee, the board, in its decision, said:

"It must be held the decision of the examiner of trade-mark interferences that The Crete Mills was first to adopt the mark including the word 'Victor' upon poultry feed is correct. The witnesses A. L. Johnson, Q. 54 to Q. 59, and B. L. Johnson, Q. 28 to Q. 30 and Q. 32, corroborated by the witnesses Talhelm, Q. 12 to Q. 14 and Q. 18, and Monaghan, Q. 18, fairly establish the use of the Victor trade mark, whether with or without the sword is deemed immaterial, upon poultry food as early as 1908."

Appellant has attacked the sufficiency of the evidence adduced by appellee to prove use of its mark upon poultry feeds earlier than the time when appellant began the use of "Victory" on its poultry food.

It is sufficient for us to say, on this point, that the evidence has been examined and we do not feel justified in reversing the finding of facts by the tribunals of the Patent Office in concurring decisions.

The assignments of error relating to the effect of a certain permission given by the Quaker Oats Company to the Crete Mills to use "Victor" upon certain products is not pressed by appellant, nor is there any serious insistence that an expression by an attorney, for appellee, in a letter of August 17, 1927, addressed to the Patent Office, to the effect that "it is not at all certain" whether confusion would occur, is binding upon appellee.

We do not regard either of these matters as entitled to consideration in determining the case. All assignments of error are overruled, and the decision of the Commissioner of Patents is affirmed.

Affirmed.

